```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

JAMES M. PFEFFER,                :
                                 :   HONORABLE JOSEPH E. IRENAS
            Plaintiff,           :
                                 :   CIVIL ACTION NO. 04-5314(JEI)
       v.                        :
                                 :           **OPINION**
JO ANNE B. BARNHART,             :
Commissioner of Social           :
Security,                        :
                                 :
            Defendant.           :

**APPEARANCES:**

James M. Pfeffer
10 Hancock Street
Swedesboro, NJ 08085
     *Pro se*


OFFICE OF GENERAL COUNSEL
SOCIAL SECURITY ADMINISTRATION
By:  Christopher J. Christie, Esq.
     Marla Piazza Siegel, Esq.
26 Federal Plaza, Room 3904
New York, NY 10278-0004
     Attorneys for Defendant


**IRENAS**, Senior District Judge:

   James M. Pfeffer ("Pfeffer") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and Section 1634(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), for review of the final determination of the Commissioner of Social Security (the "Commissioner"), denying Pfeffer's application for Social Security Disability Insurance Benefits.  For the following reasons, the Court will affirm the

decision.

**I.**

On October 26, 2001, Pfeffer filed an application with the Social Security Administration (the "SSA") for Disability Insurance Benefits.  The application was denied on February 5, 2002, and he did not further pursue it.  (R. at 13, 31.)  He filed his current claim for disability insurance benefits on June 11, 2002, claiming that he was unable to work beginning April 27, 2001, due to a heart condition and other physical conditions, including diabetes, hypertension, hypothyroidism, and arthritis.  (R. at 14.)   Pfeffer's claim was denied on October 11, 2002.  (R. at 36.)  He requested reconsideration on November 20, 2002, which was denied on January 23, 2003.  (R. at 13, 41, 44.)  He requested a hearing on March 21, 2003, which was held before an Administrative Law Judge (the "ALJ") on March 25, 2004, in Voorhees, New Jersey.  (R. at 13, 49.)  The ALJ issued a decision on April 19, 2004, holding that Pfeffer had not been "under a disability" at any time since April 27, 2001 (R. at 13.)  On June 10, 2004, Pfeffer requested review of the ALJ's decision by the Appeals Council of the SSA, which denied his request for review on August 27, 2004.  (R. at 4, 8.)  Pfeffer filed his appeal with this Court on October 29, 2004.

**II.**

Pfeffer is a sixty year old male. He currently lives in Swedesboro, New Jersey, with his wife, his thirty-three year old handicapped daughter, and his thirty-five year old son. (R. at 17.) He has a high school education and was previously employed as a millwright and bench worker at the DuPont Corporation. (R. at 14, 92, 97.)

Pfeffer claims to suffer from frequent chest pains as a result of coronary artery disease. (R. 378-383.) He suffered heart attacks in 1994 and 1999 and had angioplasty surgery after each incident. (R. at 377-379.) Pfeffer complains of chest pain if he takes out the trash or walks up a slight incline. (R. at 380.) He also claims to suffer from diabetes, hypothyroidism, and hypertension; however, he currently takes medication for each ailment, and the medicine has stabilized each condition. (R. at 383-385.) Pfeffer also claims to suffer from pain in his lower back, ankles, left arm, and joints, for which he takes Tylenol. (R. at 385-387.) He claims to have blurry vision as a result of his diabetes but his vision is relatively normal when he wears his glasses. (R. at 387-388.)

Pfeffer testified at the administrative hearing that he used to mow the grass, help around the house, and even pick up his 80-pound, handicapped daughter. But he has not done any of these activities since 2002. (R. at 391-394.) He testified that he

3

cannot sit too long or his back will begin to hurt.  (R. at 391.) Pfeffer has a trailer in Lancaster County, Pennsylvania, that he visits almost three times per month between May and October (R. at 394-395.)  While there, he often drives a golf cart.  (*Id.*) Pfeffer testified that he could still pick up around 15-20 pounds but can no longer pick up his 80-pound daughter.  (R. at 396.) He admitted to the ALJ that he could probably still do the light work required by his last job as a bench worker at DuPont.  (R. at 398-400.)

The ALJ concluded that none of Pfeffer's severe impairments met or equaled a listed impairment and that he was not disabled because he could return to his past relevant work as a bench worker.  (R. at 16, 22-23.)  Additionally, Pfeffer could perform the exertional demands of sedentary and light work.  (R. at 25.) In reaching this determination, the ALJ considered Pfeffer's subjective complaints but concluded that they were not fully credible as compared to the medical assessments of his conditions made by several doctors beginning in January 1994 continuing throughout Pfeffer's application and appeals. (R. at 18-22.)

Dr. Paul Sauers, a cardiologist, examined Pfeffer on September 26, 2002, and noted a limitation of less than two hours per day for standing and walking and no limitation as to sitting and that he could push and pull up to 25 pounds.  (R. at 322-327.)  Dr. Sauers began treating Pfeffer on October 26, 1999,

4

with follow-up visits about every four months.  (*Id.*)

Dr. Nithyashuba Khona performed an orthopedic examination of Pfeffer on January 8, 2003, and noted that "[c]laimant appears to be in no acute distress" with a prognosis of "[f]air."  (R. at 332-335.)  Dr. Khona found that Pfeffer had normal gait, could walk on his heels and toes without difficulty, and had normal station.  (*Id.*)  He needed no help getting on or off the examination table and had no difficulty in rising from the chair.  (*Id.*)  Pfeffer experienced no limitations as to his range of motion with no joint inflamation noted except for slight tenderness in his left knee.  (*Id.*)  Dr. Khona found that "[c]laimant is restricted from activities requiring moderate exertion and lifting, secondary to his cardiac condition."  (*Id.*)

Dr. Maximo Icasiano, a general practitioner, completed an evaluation of Pfeffer on August 22, 2003.  (R. at 349.)  Dr. Icasiano had been treating Pfeffer continuously from January 25, 1983 to the current period.  (R. at 198, 349.)  Dr. Icasiano noted that Pfeffer would have difficulty working full-time at even a sedentary position but that Pfeffer only experienced moderate and not severe pain.  (R. at 349.)  Dr. Icasiano's findings are contradicted by his actual evaluation of Pfeffer on or about August 22, 2003, when he found Pfeffer "doing well" and only precluded from medium to heavy exertion, meaning that he could perform sedentary or light work.  (R. at 350-352).

5

**III.**

This Court reviews the decision of the ALJ to determine whether substantial evidence on the record supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). Any finding of fact made by the ALJ shall be conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427. Substantial evidence can also be described as "more than a mere scintilla but may be somewhat less than a preponderance of the evidence[.]" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

**A. The Five-Step Sequential Evaluation**

The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. In *Plummer v. Apfel*, the Third Circuit described the five-step evaluation:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c)). If the claimant fails to show that her

> impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. *See* 20 C.F.R. 404.1523.

*Plummer*, 186 F.3d at 428. If a determination about a claimant's disability can be made at any step in the sequential evaluation, the analysis is concluded without continuing on to any remaining steps. 20 C.F.R. § 404.1520(a)(4).

### B. The ALJ's Opinion

In this case, the ALJ held that Pfeffer had not been "under a disability" at any time through April 19, 2004 (the date of the ALJ's decision). (R. at 10, 13.) The ALJ reached this

conclusion after proceeding through the five-step sequential evaluation. Upon review of the record, the ALJ's findings under each step, and thus his final determination, are supported by "substantial evidence" as required under 42 U.S.C. § 405(g) and *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In the first step, the ALJ found that Pfeffer had not engaged in substantial gainful activity since his alleged onset date of disability of April 27, 2001. (R. at 14.) The ALJ found, in the second step, that Pfeffer had status post myocardial infarction,[1] angioplasty, reasonably stable coronary artery disease, left knee degenerative joint disease, hypothyroidism, non-insulin dependent diabetes mellitus without any end organ damage, hypertension (reasonably well controlled), lumbar strain, and mild lumbar disc disease. Lumbar disc disease is a severe impairment under SSA regulations because it limits Pfeffer's ability to perform work-related activities. (R. at 15.)

In the third sequential step, the ALJ found that "[n]o treating or examining physician has made findings equivalent to the criteria of any listed impairment" with particular attention given to listings 1.00 (musculoskeletal), 4.00 (cardiovascular), 9.00 (endocrine), and 14.00 (immune). (*Id.*) The ALJ's

---

[1] Myocardial infarction is "an obstruction of circulation" to the "muscular tissue of the heart." *Dorland's Illustrated Medical Dictionary* (28th ed. 1994).

evaluation under this step was thorough and indicated which subcategories the ALJ considered under the above listings.  (*Id.*)

In step four, the ALJ concluded that Pfeffer was "restricted from medium and heavy exertion work but retain[ed] the residual functional capacity to perform the exertional demands of sedentary and light exertion work."  (R. at 22.)  Pfeffer's past relevant work as a bench worker is considered light work (R. at 400-401.); therefore, the ALJ concluded that he could return to this type of work.  (R. at 22-23.)  Pfeffer argues that he cannot perform this light work and could not work a full eight-hour day because his medicines make him tired and sleepy.  (R. at 9.)

The ALJ's determination of residual functional capacity with the ability to do light work is supported by extensive analysis of the medical evidence in the record that includes multiple medical reports spanning a period of almost three years between April 27, 2001 (the alleged date of onset of the disability), and March 25, 2004 (the date of the hearing).  (R. at 13-22.)  Pfeffer's general practitioner for over 20 years, Dr. Icasiano, indicated on or about August 22, 2003, that Pfeffer was "doing well" and was precluded from medium to heavy exertion but not sedentary or light exertion.  (R. at 350-352.)  A cardiologist, Dr. Sauers, who had been treating Pfeffer on a regular basis for almost three years, noted on December 30, 2002 that he could sit for unlimited periods of time with a limitation for standing and

walking of two hours but that he could push or pull up to 25 pounds. (R. at 322-25.) An orthopedic examination performed on January 8, 2003 by Dr. Khona, revealed no physical limitations except for mild degenerative disease in the left knee. (R. at 332-35.)

After making a determination in step four as to the plaintiff's residual functional capacity, the ALJ must consider whether the plaintiff could return to his past relevant work. The ALJ concluded that Pfeffer could only perform light work based on the numerous medical records noted above. (R. at 22.) Pfeffer's past relevant work as a bench worker required light work based on Pfeffer's testimony and that of a vocational expert (R. 373-75, 400-02.); therefore, the ALJ's conclusion that Pfeffer could return to his past relevant work was based on substantial medical evidence.

Under step five, the ALJ properly combined Pfeffer's residual functional capacity to perform only light work with his age ("advanced age" or "closely approaching advanced age"), education (high school graduate), and work experience (transferable skills) to determine that he was "not disabled" as defined under § 202.07 of Table 2, Appendix 2 to Subpart P of Part 404 - Medical-Vocational Guidelines in the Regulations. After making the determination in step four as to a plaintiff's residual functional capacity, the ALJ may simply apply the

Regulations that contain detailed descriptions of what constitutes "disabled" or "not disabled" based on the plaintiff's residual functional capacity, his age, education, and work experience.

## V. Conclusion

For the aforementioned reasons, the Court will affirm the ALJ's decision to deny Pfeffer's claim for disability insurance benefits.  The Court will issue an appropriate order.

Dated: November 20th, 2006.

                                                    s/*Joseph E. Irenas*
                                              JOSEPH E. IRENAS, S.U.S.D.J.